**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION**

| | |
|---|---|
| AMANDA NICOLE HESTER,  )  )  Plaintiff,  )  )  vs.  )  )  THAD DELOACH and  )  WILLIAM MEEKS,  )  Defendants.  )  ) | CASE NO.: 3:13-CV-093-DHB-BKE |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS
AND CONCLUSIONS OF LAW IN SUPPORT OF SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Plaintiff Amanda Hester ("Hester") submits the following Plaintiff's Response to Defendants' Statement of Material Facts and Conclusions of Law ("Plaintiff's Response") in opposition to defendants' motion for summary judgment. Plaintiff's Response sets forth Hester's responses and objections to the evidence adduced by defendants in Defendants' Statement of Material Facts and Conclusions of Law ("Defendants' Statement"), Doc. 40-2, filed September 9, 2015 in support of their motion for summary judgment.

Specific responses and objections are presented below in numbered paragraphs tracking the numbering scheme in Defendants' Statement.

**STATEMENT OF FACTS**

1. **Defendants' Statement**: In November of 2011, Amanda Hester was living with nine other individuals in a double-wide trailer. Pl.'s dep., pp.29 - 30, 32.

   **Plaintiff's Response:** Objection. The proffered fact is irrelevant under Fed. R. Evid. 401, in that it is of no consequence in determining the action; rather it is an attempt by Defendants to impugn Ms. Hester's allegations of abuse by surreptitiously denigrating the

conditions under which she is required to live because of her socioeconomic circumstances.

2. **Defendants' Statement**: The trailer was owned by Maria Murphy, who was also one of the occupants. Pl.'s dep., pp.29 - 30, 32.

   **Plaintiff's Response:** Objection on relevancy grounds. See ¶ 1, *supra*.

3. **Defendants' Statement:** One of the other occupants of the trailer was Ms. Hester's daughter, Schari Lowery, who was 16 years old at the time. Pl.'s dep., 29.

   **Plaintiff's Response:** Admitted to the extent Plaintiff and her daughter lived at the same residence. Doc. 40-5, Maria Murphy Dep. 7:12-14 (hereinafter, "Murphy Dep.").

4. **Defendants' Statement:** On the evening of November 28, 2011, Ms. Hester and Ms. Lowery began having an argument in the trailer. Pl.'s dep., pp.54 - 55.

   **Plaintiff's Response:** Denied. Lowery disobeyed her mother, and Ms. Hester determined that Lowery needed to be disciplined. Murphy Dep. 8:19-21.

5. **Defendants' Statement:** The argument concerned Lowery's cell phone. Pl.'s dep., p.55.

   **Plaintiff's Response:** Objection, on relevancy grounds. See ¶ 1, *supra*.

6. **Defendants' Statement:** During the argument, Hester tried to spank Lowery. Pl.'s dep., p.55.]

   **Plaintiff's Response:** Admitted to the extent Ms. Hester attempted to discipline her daughter but was unsuccessful. Hester Dep. 60:14-19.

7. **Defendants' Statement:** However, Lowery fought back by punching or slapping Hester. Pl.'s dep., pp.55 - 56.

   **Plaintiff's Response:** Denied. Schari Lowery "balked, blew up" and punched her

mother, Ms. Hester, in the back. Murphy Dep. 8:21-23.

8. **Defendants' Statement:** Because of the escalating violence, Maria Murphy called 911. Pl.'s dep., p.56.

   **Plaintiff's Response:** Denied as improper characterization of mutual violence. Maria Murphy called 911 after Ms. Lowery punched Ms. Hester in the back, and hit Ms. Hester in the back of the head. Doc. 40-3, Amanda Hester Dep. 56:9-15 (hereinafter, "Hester Dep.").

9. **Defendants' Statement:** Just after Murphy called 911, Hester's husband —Adam Hester— intervened in the fight. Adam Hester dep., p.13.

   **Plaintiff's Response:** Denied. After Adam Hester heard Maria Murphy call 911 about "a juvenile that was out of control," he tried to "get [Schari] away from [his] wife." Doc. 40-4, Adam Hester Dep. 13:12-13 (hereinafter "Adam Hester Dep.").

10. **Defendants' Statement:** To stop the fight, he "actually picked [his] wife up and toted her out of the room." Adam Hester dep., p.13.

    **Plaintiff's Response:** Denied as improper characterization. Adam Hester intervened because Lowery was "out of control." Adam Hester Dep. 13:13. Mr. Hester first attempted to "[g]et [Schari] away from [his] wife because [Schari] kept hitting [Ms. Hester]." *Id.* at 13:14-15. Mr. Hester finally "[got] them away from each other" by taking his wife to the living room. *Id.* at 13:15-25.

11. **Defendants' Statement:** Once the fight had been broken up, Hester went outside to the front porch to smoke a cigarette. Adam Hester dep., p.15.

    **Plaintiff's Response:** Admitted.

12. **Defendants' Statement:** While Hester was standing on the front porch, Deputy Meeks arrived. Pl.'s dep., p.58.

    **Plaintiff's Response:** Admitted.

13. **Defendants' Statement:** Hester had never had any previous dealings with Deputy Meeks, and she testified that she did not know him "at all." Pl.'s dep., p.88.

    **Plaintiff's Response:** Denied. Defendants rely on a quote from Ms. Hester's deposition testimony taken out of context. While Ms. Hester did not know Deputy Meeks personally, she recognized him from the fields where their kids both played T-ball. Hester Dep. 11:10-17.

14. **Defendants' Statement:** Deputy Meeks inquired about the reason for the 911 call, and Hester told him about the fight with her daughter. Pl.'s dep., p.60.

    **Plaintiff's Response:** Denied. Ms. Hester told Deputy Meeks that she tried unsuccessfully to discipline her daughter and that Ms. Lowery had hit her. Hester Dep. 60:14-19, 24-25. Ms. Hester's testimony is silent as to what Deputy Meeks asked her. Ms. Hester testified only that "he told me I could file a juvenile complaint against my daughter and I told him that a juvenile complaint wouldn't do a bit of good because I've got a hundred of them." Hester Dep. 60:10-13.

15. **Defendants' Statement:** Maria Murphy, Neil Lowery, and Hester's husband were also on the porch during that conversation. Pl.'s dep., p.58.

    **Plaintiff's Response:** Denied. Ms. Hester testified that "Maria, Neil, and Adam" were "outside" the trailer. Hester Dep. 58:4-5. Ms. Hester and Maria Murphy were on the porch when Deputy Meeks arrived. Murphy Dep. 10:8-18. Adam Hester and Kermit Neal

Lowery, were in the yard. Murphy Dep. 10:24-25; Adam Hester Dep. 16:7-8.

16. **Defendants' Statement:** Deputy Meeks told Hester that she could file a juvenile complaint, and Hester responded that "a juvenile complaint wouldn't do a bit of good because [she had] a hundred of them." Pl.'s dep., p.58.

    **Plaintiff's Response:** Admitted. *See* ¶ 14, *supra*.

17. **Defendants' Statement:** Though Hester denies using any profanities during this conversation, she does admit that she was "talking loudly." Pl.'s dep., p.61.

    **Plaintiff's Response:** Denied as argumentative. Ms. Hester admits that she continued to "talk[] loudly" after Deputy Meeks arrived, but her frustration was with "the situation" with her daughter, and not directed at Deputy Meeks. Hester Dep. 61:7-13.

18. **Defendants' Statement:** Similarly, when asked to describe Hester's demeanor while speaking with Deputy Meeks, her husband testified that she was "a little loud and, you know, I guess obnoxious." Adam Hester dep., p.18.

    **Plaintiff's Response:** Denied as mischaracterization, by use of a quote taken out of context. Adam Hester testified that Ms. Hester "was trying to tell him, [Deputy Meeks,] what was going on. And she was a little loud and you know, I guess obnoxious…because…[o]f the fact of what was going on." Adam Hester Dep. 18:2-6.

19. **Defendants' Statement:** Likewise, Maria Murphy testified that Hester was "loud" and "angry" about a deputy being there. Murphy dep., p.15.

    **Plaintiff's Response:** Denied as argumentative.

20. **Defendants' Statement:** In further describing what Hester told Deputy Meeks, Murphy testified: "[Hester] was upset. And she said something to the sense of why are you here,

y'all have never done nothing before. Something about get in your own vehicle." Murphy dep., p.15.

**Plaintiff's Response:** Denied as inadmissible hearsay not subject to an exception. *See* Fed. R. Evid. 803. Even if Ms. Murphy's statement were admissible, Ms. Murphy did not "remember the extent of the conversation from word to word." Murphy 15:5-6. As such, Ms. Murphy's testimony, as to content of the exchange between Ms. Hester and Deputy Meeks, is not to be credited. See Murphy Dep. 15:19, 16:3, 11.

21. **Defendants' Statement:** Because of Hester's demeanor, her husband repeatedly told her to "calm down." Adam Hester dep., p.18.

**Plaintiff's Response:** Denied as a mischaracterization. Ms. Hester, who was already upset "at the situation," *supra* at ¶ 17, grew more frustrated when "[Deputy Meeks] didn't want to hear nothing she had to say." Adam Hester Dep. 18:7-8.

22. **Defendants' Statement:** Despite that advice, Hester told Deputy Meeks that "the best thing for [him] to do is leave." Adam Hester dep., p.18.

**Plaintiff's Response:** Admitted to the extent that Ms. Hester said, "the best thing for [him] to do is to get back in your car and leave," at one point during her interaction with Deputy Meeks. Doc. 40-8, 260 (Criminal Trial Tr. vol. 2, 299 - Exhibit S2, Transcript of Taped Interview of Amanda Hester by Captain Chris Bracewell, November 30, 2011) (hereinafter, "Bracewell Transcript," with parallel citations to ECF/Crim Tr. pagination). Ms. Hester made this statement after she realized Meeks' only solution was to "contact juvenile justice" because he "cannot arrest [a juvenile] … or take [her] to our jail." Plt. 60:10-13; Doc. 40-8, 75 (Trial Tr. vol. 2, 114:5-7). When Ms. Hester made this

statement, she "wasn't yelling." Bracewell Tr. 260 (Trial. Tr., 296).

23. **Defendants' Statement:** Sometime during this conversation, Deputy DeLoach arrived on scene. Pl.'s dep., pp.59 - 60.

    **Plaintiff's Response:** Admitted.

24. **Defendants' Statement:**  However, he remained in the yard in front of the trailer and did not participate in Hester's verbal confrontation with Deputy Meeks. Pl.'s dep., pp.66 - 67, 82.

    **Plaintiff's Response:** Admitted. Defendants omit from their statement, however, that "as soon as DeLoach pulled up[,] Meeks (sic) whole attitude and demeanor changed." Bracewell Tr. 297.  As soon as DeLoach arrived, Meeks "got this bad ass attitude about him like he had a point to prove or something…." *Id.*

25.  **Defendants' Statement:** Hester testified that she had previously worked with Deputy DeLoach and that they "got along." Pl.'s dep., p.89.

    **Plaintiff's Response:** Admitted.

26.  **Defendants' Statement:** Hester also said that she and Deputy DeLoach had never had any disputes or arguments. Pl.'s dep., p.89.

    **Plaintiff's Response:** Admitted.

27. **Defendants' Statement:** Next, Deputy Meeks warned Hester that he would arrest her for disorderly conduct if she did not calm down. Pl.'s dep., p.62.

    **Plaintiff's Response:** Denied.  At her deposition, Ms. Hester was asked, "[a]t *some point* did one of the deputies tell you you could be arrested for disorderly contact (sic)?"

Hester Dep. 62:7-8 (emphasis added).  Ms. Hester replied, "[y]es." *Id*. at 9.  Adam Hester's testimony establishes the sequence of the exchange.  Adam Hester Dep. 18:13-25.  After Ms. Hester refused to "be quiet,…[Deputy Meeks] said ma'am if you say one more word you're going to jail. And she said what am I doing wrong, I'm trying to explain to you what's going on. He said, like I said, if you say one more work you're going to jail." *Id*.  It was at this point that Ms. Hester suggested that the deputies should leave, as alleged, *supra*, ¶ 22.  Deputy Meeks' testimony at the criminal trial confirms the content of his statement to Ms. Hester, "if she didn't stop, if she didn't calm down and let us do our job while we there, that she was going to have to go with us; we were going to take her jail, too." Doc. 40-8, 76 (Trial Tr. vol. 2, 115:4-7).

28. **Defendants' Statement:** Though Hester claims that she did, in fact, calm down, she was unable in her deposition to articulate or describe how she did so. Pl.'s dep., pp.63 - 64.

    **Plaintiff's Response:** Denied as argumentative. Ms. Hester stated three times, "I calmed down…. From what I was originally to later on, yeah I calmed down…. I mean did I calm down? Yes. I know when I calmed down." Hester Dep. 63:20, 22-23, 64:4-5.

29. **Defendants' Statement:** Deputy Meeks decided to place her under arrest for disorderly conduct. Pl.'s dep., p.65.

    **Plaintiff's Response:** Admitted to the extent Ms. Hester heard Deputy Meeks say she "was being arrested for disorderly conduct." Hester Dep. 65:23-24. When Deputy Meeks was asked during the criminal trial why he decided to place Ms. Hester under arrest, he answered: "[f]or the continued interrupting, continued obstruction of us…of me doing my job. Yes, ma'am." Doc. 40-8, 85 (Trial Tr. 124: 8:11). Deputy Meeks testified that "it became clear that she was not going to cooperate, not allow us to finish our investigation

of the incident." Doc. 40-8, 76 (Trial Tr. 115:14-16). In response, Meeks "came up the steps and told her her to turn around and put her hands behind her back, she was going to jail." Adam Hester Dep. 18:21-25; doc. 40-8, 76 (Trial Tr. 115:17-18).

30. **Defendants' Statement:** Deputy Meeks instructed Hester to turn around so that he could handcuff her. Pl.'s dep., p.64.

    **Plaintiff's Response:**  Denied as a mischaracterization. Meeks "grabbed her and pushed [her] around to the trailer and put her in handcuffs." Adam Hester Dep. 19:1-2.

31. **Defendants' Statement:** She did so, and Deputy Meeks cuffed her. Pl.'s dep., p.65.

    **Plaintiff's Response:**  Denied on same grounds as in ¶ 30, *supra*.

32. **Defendants' Statement:** As Deputy Meeks cuffed her, Deputy DeLoach remained in the yard and did not directly participate in placing her under arrest. Pl.'s dep., p.66.

    **Plaintiff's Response:**  Disputed by Defendants' own testimony. "Corporal DeLoach then came up the stairs and assisted me. *We* [got her] in handcuffs, placed her under arrest, escorted her to my vehicle." Doc. 40-8, 77 (Trial Tr. 116:2-5) (emphasis added).

33. **Defendants' Statement:** Deputy Meeks next began to escort Hester to his patrol car. Pl.'s dep., p.68.

    **Plaintiff's Response:**  Admitted.

34. **Defendants' Statement:** Deputy Meeks walked behind her and had one hand on the cuffs. Pl.'s dep., pp.68 - 69.

    **Plaintiff's Response:**  Admitted.

35. **Defendants' Statement:** Hester says that he kept his other hand somewhere on her upper

body, but she does not recall where. Pl.'s dep., pp.69 - 70.

**Plaintiff's Response:** Admitted to the extent that Deputy Meeks put his second hand on Ms. Hester while he was escorting her to the patrol car. From his vantage point in the yard, Adam Hester witnessed the escort from the porch to the patrol car. Adam Hester Dep. 22:6. From his position, Mr. Hester saw Deputy Meeks "grab[] her hands, and he walked her down the steps and they're headed toward [Meeks'] car….And she…[t]urned her head back to say baby…and [Meeks] stopped, put his hand on her neck, reached down on the inside of her thigh, snatched her legs up and drover her to the ground….[h]ead first[.]" *Id.* at 24:13-21.

36. **Defendants' Statement:** As they were walking in the yard, Hester told Deputy Meeks to "hurry up." Pl.'s dep., p.70.

   **Plaintiff's Response:** Admitted.

37. **Defendants' Statement:** Additionally, Hester was trying to walk faster than Deputy Meeks, and he was having to pull back on the cuffs to slow her down. Pl.'s dep., p.70.
   **Plaintiff's Response:** Denied.  Ms. Hester testified that it was the difference in their walking speeds that was "causing [Deputy Meeks' arm] to pull back…pulling [Ms. Hester's] arm backward." Hester Dep. 70:16-23.

38. **Defendants' Statement:** Hester then started to turn around. Pl.'s dep., pp.71 – 72
   **Plaintiff's Response:** Denied.  Ms. Hester merely "turned [her] head," Hester Dep. 71:19, "over [her] left shoulder," *Id.* at 72:15, in order to tell her husband "[t]o call Judy Tanner to come get me out of jail." Id. at 72:20-21.

39. **Defendants' Statement:** In Hester's words, "Next thing I know I'm picking myself up

off the ground." Pl.'s dep., p.73.

**Plaintiff's Response:** Admitted to the extent Ms. Hester made the statement during her deposition.

40. **Defendants' Statement:** When asked to elaborate, Hester explained that she felt like Deputy Meeks lifted her up and dropped her just as she was turning around. Pl.'s dep., pp.74 - 75.

**Plaintiff's Response:** Admitted, to the extent Ms. Hester was expressing a feeling about the incident. Adam Hester further testified that Deputy Meeks "snatched her leg up with [his right] hand and…her legs came up higher than her [head]." Adam Hester Dep. 25:19-20.

41. **Defendants' Statement:** Hester does not know where Deputy DeLoach was when she went to the ground, but she believes that he was talking to the other occupants of the trailer who were standing on the porch. Pl.'s dep., pp.75 - 76.

**Plaintiff's Response:** Admitted.

42. **Defendants' Statement:** Once Hester was on the ground, she lay on her side with Deputy Meeks kneeling behind her. Pl.'s dep., p.78.

**Plaintiff's Response:** Denied. Once Meeks "d[rove] her head first into the ground…her shoulder hit first…. By that time [Meeks] had his knee in her back." Adam Hester Dep. 24:1-7. Adam Hester's immediate reaction after Deputy Meeks "threw my wife on the ground," *id.* at 27:23, was to "holler[]…'man…that's a damn female.'" *Id.* 24:7-8.

43. **Defendants' Statement:** Deputy DeLoach then walked over, and the deputies told Hester to get up. Pl.'s dep., p.78.

**Plaintiff's Response:** Admitted to the extent DeLoach eventually walked over. Ms. Hester testified that she was on the ground a "couple of minutes" with only Deputy Meeks at her back. Hester Dep. 77:3-4. Before DeLoach approached, Adam Hester tried to assist his wife, but DeLoach grabbed his weapon, looked at Mr. Hester, pointed to Mr. Hester, and said "no no." So Mr. Hester "backed off." Adam Hester Dep. 27:22-28:1.

44. **Defendants' Statement:** Hester responded that she could not get up and that she could not feel her right arm. Pl.'s dep., p.78.

    **Plaintiff's Response:** Admitted.

45. **Defendants' Statement:** Both deputies helped Hester get to her feet, and they continued walking to Deputy Meeks's car. Pl.'s dep., p.79.

    **Plaintiff's Response:** Admitted to the extent that both deputies picked Ms. Hester up from the ground. Adam Hester Dep. 39:2-17. As they picked her up, however, the deputies did not "treat [Ms. Hester] in a manner in which you treat somebody whose got a broken arm." *Id.* at 39:11-15.

46. **Defendants' Statement:** Hester got into the back of the car with her hands still cuffed behind her. Pl.'s dep., p.80.

    **Plaintiff's Response:** Admitted.

47. **Defendants' Statement:** Hester again complained about her arm hurting, and one of the deputies uncuffed her and re-cuffed her arms in the front. Pl.'s dep., pp.80 - 81.

    **Plaintiff's Response:** Admitted to the extent one of the deputies eventually re-cuffed Ms. Hester's arm in the front.

48. **Defendants' Statement:** Then, an ambulance with EMTs arrived on scene. Pl.'s dep.,

p.81.

**Plaintiff's Response:** Admitted. Ms. Hester was in the back of the patrol car for 20-25 minutes, waiting for the EMTs to arrive. Hester Dep. 82:22

49. **Defendants' Statement:** Hester estimates that the EMTs arrived within 25 minutes following her fall. Pl.'s dep., p.82

**Plaintiff's Response:** Denied. The evidence, viewed in light most favorable to Ms. Hester's version of events, establishes that she did not "fall" but was "thrown to the ground." See ¶¶ 39-42, *supra*.

50. **Defendants' Statement:** Once the EMTs were there, the deputies removed Hester's cuffs, and the EMTs examined her. Pl.'s dep., p.87.

**Plaintiff's Response:** Admitted.

51. **Defendants' Statement:** Next, the EMTs placed Hester in the ambulance and drove her to the ER at Fairview Park Hospital. Pl.'s dep., p.87.

**Plaintiff's Response:** Admitted.

52. **Defendants' Statement:** Hester testified that she was diagnosed with a fracture. Pl.'s dep., pp.93 - 94.

**Plaintiff's Response:** Admitted.

53. **Defendants' Statement:** Hester was ultimately tried and convicted for committing obstruction of an officer. Pl.'s dep., p.106.

**Plaintiff's Response:** Denied. Ms. Hester's criminal charges have not been finally determined. Ms. Hester has challenged the outcome of the trial by moving for a new

trial. The Superior Court judge has yet to hold a hearing on Hester's motion. See Plaintiff's Opposition to Summary Judgment, Exhibit A, Docket/Case Activity Report, filed concurrently herewith.

54. **Defendants' Statement:** During that trial, her attorney argued that the obstruction charge related to conduct that occurred after her initial arrest for disorderly conduct. See, e.g., Trial Transcript, p.241.

    **Plaintiff's Response:** Denied as inadmissible. Statements made by counsel during a closing argument are not evidence. *United States v. DeLoach*, 34 F. 3d 1001, 1005 (11th Cir. 1994).

55. **Defendants' Statement:** For example, during closing arguments, her attorney argued, "[S]he was already under arrest for disorderly conduct when later this obstruction allegedly happened." Id. at p.242.

    **Plaintiff's Response:** Denied as inadmissible. See ¶ 54, *supra*.

56. **Defendants' Statement:** Similarly, the attorney also stated that "she obstructed after she was placed under arrest." Id. at p.241

    **Plaintiff's Response:** Denied as inadmissible. See ¶ 54, *supra*.

## CONCLUSIONS OF LAW

1. **Defendants' Conclusion:** Because of Hester's conviction for obstructing an officer, her federal claims are barred under Heck v. Humphrey, 512 U.S. 477 (1994).

    A. By finding that Hester committed obstruction, the jury in the criminal trial necessarily must have found that Hester's arrest was lawful; thus, the arrest claim is barred.

    B.  Because Hester contends that the force was used while she was committing obstruction, the conviction also bars the excessive-force claim.

**Plaintiff's Response:** Denied, for reasons argued more fully in Plaintiff's Brief in Opposition.

2. **Defendants' Conclusion:** Even if Hester's conviction did not bar her federal claims, both deputies are nonetheless entitled to qualified immunity with respect to those claims.

    A.  Because there was probable cause or at least arguable probable cause to arrest Hester, qualified immunity bars the arrest claim.

    B.  Because Hester was committing obstruction, resisting arrest, and reasonably appeared to be escalating the situation, qualified immunity also bars the excessive-force claim.

**Plaintiff's Response:** Denied, for reasons argued more fully in Plaintiff's Brief in Opposition.

3. **Defendants' Conclusion:** Official immunity bars Hester's state claims.

**Plaintiff's Response:** Admitted.

4. **Defendants' Conclusion:** Even if official immunity did not bar the state claims, summary judgment would still be appropriate on the claim for intentional infliction of emotional distress because Hester has not adequately proven that claim.

**Plaintiff's Response:** Denied, for reasons argued more fully in Plaintiff's Brief in Opposition.

5. **Defendants' Conclusion:** The deputies are also entitled to summary judgment on the

assault and battery claims because the level of force was not unconstitutionally excessive.

**Plaintiff's Response:** Denied, for reasons argued more fully in Plaintiff's Brief in Opposition.

RESPECTFULLY SUBMITTED, this 5th day of October, 2015.

                THE CLAIBORNE FIRM, P.C.

                /s/ *William R. Claiborne*
                WILLIAM R. CLAIBORNE
                Georgia Bar Number: 126363
                *Attorney for Plaintiff*

410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
will@claibornefirm.com

                S. WESLEY WOOLF, P.C.

                /s/ *S. Wesley Woolf*
                S. WESLEY WOOLF
                Georgia Bar Number: 776175
                *Attorney for Plaintiff*

408 East Bay Street
Savannah, Georgia 31401
(912) 201-3696 Telephone
(912) 236-1884 Facsimile
woolf@woolflawfirm.net

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**DUBLIN DIVISION**

| | |
|---|---|
| AMANDA NICOLE HESTER, )<br>)<br>    Plaintiff, )<br>)<br>vs. )<br>)<br>THAD DELOACH and )<br>WILLIAM MEEKS, )<br>    Defendants. )<br>_____ ) | CASE NO.: 3:13-CV-093-DHB-BKE |

## CERTIFICATE OF SERVICE

I hereby certify that I have served all parties in this case in accordance with the directive from Court's Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing, with the foregoing "Plaintiff's Response to Defendants' Statement."

This 5th day of October, 2015.

/s/ William R. Claiborne
WILLIAM R. CLAIBORNE
*Attorney for Plaintiff*
Georgia Bar Number: 126363

410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
will@claibornefirm.com