# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2016 MAY 23 P 2: 38

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

AMANDA NICOLE HESTER,           *
                                *
        Plaintiff,              *
                                *
    v.                          *          CV 313-093
                                *
THAD DELOACH and                *
WILLIAM MEEKS,                  *
                                *
        Defendants.            *

---

## O R D E R

Presently before the Court is Defendants' motion for summary judgment (Doc. no. 40). For the reasons below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

The present dispute arises out of Plaintiff's arrest in November 2011 on a charge of disorderly conduct. (Amanda Dep., Doc. no. 40-3, at 54-55, 65.) Placed into custody by Defendants, Laurens County Sheriff's Deputies Thad DeLoach and William Meeks, Plaintiff maintains that these officers arrested her unlawfully and used excessive force in violation of the Fourth Amendment to the United States Constitution. Consequently, Plaintiff instituted this suit on November 19, 2013, alleging, *inter alia*, claims under 42 U.S.C. § 1983. (Compl., Doc. no. 1.) The facts underlying Plaintiff's

claims, viewed in the light most favorable to her, are as follows.

On the evening of November 28, 2011, inside their home in Laurens County, Georgia, Plaintiff and her then minor daughter Schari Lowery began arguing about the content on Schari's cell phone. (Id. at 14, 29, 51, 54-55.) Because Schari had removed something from the cell phone that she was not supposed to, Plaintiff attempted to spank her. (Id. at 55.) However, Schari reacted by hitting Plaintiff once on her back and once on the back of her head. (Id. at 55-56.) Seeing this situation escalate, Maria Murphy, a friend with whom Plaintiff and Schari lived, called 911. (Id. at 30, 56.)

After Plaintiff's husband, Adam Hester, intervened, the altercation subsided, and Plaintiff stepped outside to smoke a cigarette. (Adam Dep., Doc. no. 40-4, at 13-15.) Shortly thereafter, in response to the 911 call, Deputy Meeks arrived on scene and greeted Plaintiff on her front porch. (Id. at 16; Amanda Dep. at 58.) There, Plaintiff, talking loudly, explained to Deputy Meeks that she was unsuccessful in spanking Schari and that Schari had fought back and struck her. (Amanda Dep. at 60-61.) Hearing this, Deputy Meeks told Plaintiff that she could file a juvenile complaint against Schari, but Plaintiff replied that "a juvenile complaint

wouldn't do a bit of good" because she had "a hundred of them." (Id. at 60.)

As Plaintiff spoke with Deputy Meeks, her frustration with the situation was apparent to those present. (Id. at 61; Adam Dep. at 18; Murphy Dep., Doc. no. 40-5, at 15.) In fact, realizing that his wife was becoming "a little loud" and "obnoxious," Plaintiff's husband told Plaintiff multiple times to "calm down" and also directed her to "just be quiet" and to "just listen" to Deputy Meeks. (Adam Dep. at 18.) Notwithstanding this direction, Plaintiff continued to express her frustration, and consequently, Deputy Meeks informed her that she would go to jail if she "sa[id] one more word." (Id.) While Plaintiff contends that she did in fact calm down, her husband maintains that she responded to Deputy Meeks' warning by telling him the following: "[W]ell the best thing for you to do is leave because you're not going to do anything anyway." (Id.; Amanda Dep. at 63.) Given this response, Deputy Meeks "told [Plaintiff] to turn around and put her hands behind her back" because she "was being arrested for disorderly conduct." (Adam Dep. at 18; Amanda Dep. at 65.) Then, Deputy Meeks "came up the steps," "grabbed [Plaintiff]," and "pushed [her] around to the trailer and put her in handcuffs." (Adam Dep. at 18-19.) At this point, Deputy DeLoach, who had arrived on scene earlier but had not engaged

in the conversation with Plaintiff, came up on the porch and assisted Deputy Meeks.[1] (Trial Tr., Vol. II, Doc. no. 40-8, at 116.)

Once Plaintiff was handcuffed, Deputy Meeks began escorting her to his patrol car. (Amanda Dep. at 68-69.) In doing so, Deputy Meeks walked behind Plaintiff with one hand on the handcuffs and the other hand on Plaintiff's body – a manner which was hurting Plaintiff's shoulders. (Id. at 68-70.) Because of this discomfort, Plaintiff instructed Deputy Meeks to "hurry up." (Id. at 70-71.) Shortly thereafter, when Plaintiff turned her head with the intent to tell her husband something, Deputy Meeks "stopped, put his hand on [Plaintiff's] neck, reached down on the inside of her thigh, snatched her legs up and drove her down to the ground" where she landed "shoulder first." (Id. at 71, 77-78; Adam Dep. at 24.) Once on the ground, Plaintiff laid there - with Deputy Meeks' knee poking her in the back - until Deputy DeLoach walked over and both deputies instructed her to get up. (Amanda Dep. at 78.) However, expressing that she could not

---

[1] Plaintiff indicates that, upon Deputy DeLoach's arrival, Deputy Meeks "got this bad ass attitude about him like he had a point to prove or something," and his "whole attitude and demeanor changed." (Trial Tr. at 297.) Additionally, because of her position as a jail officer for the Laurens County Sheriff during parts of 2004 and 2005, Plaintiff once had a professional relationship with Deputy DeLoach. (Amanda Dep. at 24, 89.) However, because Plaintiff has not alleged that their prior relationship had any effect on the encounter at hand, it is irrelevant for purposes of this motion.

4

feel her right arm, Plaintiff remained on the ground until the deputies helped her to her feet. (Id. at 78-79.)

Upon being placed in the back of the patrol car, Plaintiff again complained of the pain in her arm. (Id. at 80.) Accordingly, one of the deputies repositioned the handcuffs to the front of Plaintiff's body, where they remained until emergency medical technicians arrived and transported Plaintiff to Fairview Park Hospital in Dublin, Georgia. (Id. at 81-82, 87.) There, Plaintiff was diagnosed with a broken arm. (Id. at 93-94.)

Since this incident, criminal and civil litigation has ensued. On the criminal side, although she has filed a motion for a new trial, Plaintiff was convicted by a jury, on October 10, 2014, of one count of obstruction of an officer in violation of O.C.G.A. § 16-10-24(a). (Ex. A., Doc. no. 42-3.) As for her civil case, Plaintiff initiated this action on November 19, 2013, in the Superior Court of Laurens County, Georgia, by asserting six causes of action against Laurens County Board of Commissioners; W.A. Harrell, in his official capacity as Sheriff of Laurens County, Georgia; Thad DeLoach, in his individual and official capacities; and William Meeks, in his individual and official capacities. (Id.; Compl.) However, after Defendants removed the case on December 20, 2013 (Doc. no. 1), this Court narrowed Plaintiff's claims such

that only her (1) unlawful arrest, (2) excessive force, (3) intentional infliction of emotional distress ("IIED"), (4) assault, and (5) battery claims against Defendants DeLoach and Meeks, in their individual capacities, remain. (Doc. no. 21.) With respect to these claims, Defendants filed the instant motion for summary judgment (Doc. no. 40) on September 9, 2015. Thereafter, in compliance with <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), the Clerk provided Plaintiff with notice of the summary judgment motion, the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. no. 41.) Subsequently, Plaintiff filed a response (Doc. no. 42), Defendants filed a reply (Doc. no. 43), Plaintiff filed a sur-reply (Doc. no. 45), and Defendants filed a second reply (Doc. no. 46). As a result, Defendants' motion is now ripe for the Court's consideration.

## II. DISCUSSION

Defendants' motion for summary judgment will be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this context, facts are "material" if they could affect the outcome of the suit under the governing substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). In evaluating the contentions of

the parties, the Court must view the facts in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor," <u>United States v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

Initially, the moving party bears the burden and must show the Court, by reference to materials on file, the basis for the motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. <u>See</u> <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970) and <u>Celotex</u>, 477 U.S. 317). Before evaluating the non-movant's response in opposition, the Court must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. <u>Jones v. City of Columbus</u>, 120 F.3d 248, 254 (11th Cir. 1997) (per

curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. <u>Clark</u>, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." <u>Id.</u> When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." <u>Fitzpatrick</u>, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." <u>Id.</u> at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. <u>See Morris v. Ross</u>, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Instead, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

## A. Unlawful Arrest

In her complaint, Plaintiff has alleged that Defendants arrested her without probable cause in violation of the Fourth Amendment and 42 U.S.C. § 1983. Meanwhile, Defendants maintain that a finding of unlawful arrest would invalidate Plaintiff's obstruction conviction and contravene the principles set forth in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).

According to the Supreme Court in <u>Heck</u>, in order for a plaintiff

> to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

<u>Id.</u> at 486-87. Thus, district courts "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of [a] conviction or sentence." <u>Id.</u> at 487. "[I]f it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." <u>Id.</u> "But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be

9

allowed to proceed, in the absence of some other bar to the suit." Id.

Based on the transcript of her criminal trial, Plaintiff's obstruction conviction could have stemmed (1) solely from conduct occurring before her arrest, (2) solely from conduct occurring after her arrest, or (3) from conduct occurring both before and after her arrest. Accordingly, Plaintiff argues that "[t]here remains, then, a fact question" such that "summary judgment on [Plaintiff's] § 1983 unlawful arrest claim is improper." (Pl.'s Br., Doc. no. 42-1, at 17.) Yet, as demonstrated below, Plaintiff's unlawful arrest claim cannot survive, regardless of when the obstruction actually occurred.

In Georgia, a person commits obstruction only when she "knowingly and willfully obstructs or hinders a[] law enforcement officer in the *lawful discharge of his official duties.*" O.C.G.A. § 16-10-24(a) (emphasis added). Therefore, if Plaintiff's conviction arose out of events post-arrest, (1) her obstruction must have occurred as Defendants were escorting her to the patrol car, and (2) Defendants must have been discharging their duties lawfully as they did so. However, Defendants could only have been acting lawfully if they had probable cause for Plaintiff's arrest. See Brown v. State, 294 S.E.2d 305, 308 (Ga. Ct. App. 1982) ("[A] police

officer is *not* discharging his lawful duty when he arrests an individual without reasonable or probable cause."). Yet, concluding that Defendants had probable cause would be contrary to Plaintiff's overall claim of unlawful arrest. For that reason, if Plaintiff's conviction was based in *any part* on her actions post-arrest, her unlawful arrest claim cannot move forward.

Meanwhile, if Plaintiff's conviction was based solely on pre-arrest conduct, Plaintiff's unlawful arrest claim could only move forward if the Court could make the following conclusion: Plaintiff committed obstruction pre-arrest but Defendants did not have probable cause at the time of arrest. While this conclusion is possible, Plaintiff has not pointed to any evidence that would lead the Court to such an unusual finding in this case. For that reason, Plaintiff's unlawful arrest claim, based on this set of facts, is also barred by Heck.[2]

As a last resort, Plaintiff argues that even if Heck applies, her pending motion for a new trial renders her criminal case ongoing such that the instant case may be stayed, but not dismissed. In support of this contention,

---

[2] To the extent that Plaintiff asserts that Heck should not apply because she was arrested for a crime other than that for which she was ultimately convicted, that argument is also unpersuasive. See Devenpeck v. Alford, 543 U.S. 146, 153 (2004) ("That is to say, [an officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.").

11

Plaintiff cites to the following passage from the Supreme Court's decision in Wallace v. Kato, 549 U.S. 384, 393-94 (2007): "[I]t is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." Based on this provision alone, it appears that Plaintiff's motion for a new trial should prevent a dismissal under Heck. On the other hand, the Court draws a different conclusion when reading the quoted language within its context:

> If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. . . . If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, Heck will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

Id.

While Plaintiff did file her unlawful arrest claim before her criminal trial, she has since been convicted of obstruction, and neither her conviction nor her sentence "ha[ve] been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . , or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 487. Therefore, Plaintiff's

12

final argument fails, and her claim for unlawful arrest cannot withstand summary judgment.

## B. Excessive Force

Plaintiff has also alleged that Defendants used excessive force in violation of the Fourth Amendment and 42 U.S.C. § 1983. In response, Defendants assert that (1) Plaintiff's conviction for obstruction of an officer and (2) qualified immunity should prevent them from facing any liability. While Plaintiff rejects these arguments as to Deputy Meeks, she concedes that summary judgment as to Deputy DeLoach is appropriate. Consequently, Plaintiff's excessive force claim against Deputy DeLoach will not move forward. As for Plaintiff's claim against Deputy Meeks, the analysis below will address its propriety.

### 1. Plaintiff's Conviction for Obstruction of an Officer

Because the trial record is devoid of evidence indicating that Plaintiff struggled with or resisted Deputy Meeks after he brought her to the ground, Plaintiff's obstruction conviction was based on actions that occurred before those events giving rise to her excessive force claim. Accordingly, a finding that Plaintiff used excessive force would not contradict the jury's earlier finding that Deputy Meeks was lawfully discharging his duties at the time he was obstructed

13

by Plaintiff.[3] As a result, Plaintiff's excessive force claim is not barred by the Supreme Court's holding in Heck.

## 2. Qualified Immunity

Defendants' second argument in favor of summary judgment on this claim is rooted in qualified immunity - a judicially created affirmative defense under which "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). However, the validity of a qualified immunity defense depends on a two-step analysis. First, the Court must determine whether the defendant has proven that "the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." Harbert Int'l, Inc. v. James, 157

---

[3]    During Plaintiff's criminal trial, her counsel argued that if she obstructed at all, it was only after she was placed under arrest. (Trial Tr. at 241-42.) Hence, Defendants contend that Plaintiff's "obstruction and Deputy Meeks'[] use of force [must have] both occurred as she was walking to the patrol car." (Defs.'. Reply Br., Doc. no. 43, at 4-5.) Moreover, based on this assertion, Defendants argue that "the use of force and the obstruction were temporally intertwined" such that the instant claim is barred by Heck. (Id.) While the Court acknowledges that the two events may have occurred as the parties were walking to the patrol car, this fact does not preclude the Court from finding that the force was applied subsequent to Plaintiff's obstruction. Furthermore, even if the Court agreed with Defendants' logic, accepting their full argument would likely be problematic in view of Eleventh Circuit precedent. See Dyer v. Lee, 488 F.3d 876, 884 (11th Cir. 2007) (suggesting that Heck should not apply in cases where it "would imply that once a person resists law enforcement, [s]he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages" (internal quotation marks and citation omitted)).

14

F.3d 1271, 1281 (11th Cir. 1998). Then, if the defendant is successful, the Court must analyze whether the plaintiff has met her burden of proving that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).

Here, both parties acknowledge that Deputy Meeks was acting within the scope of his discretionary authority when he applied the force at hand. Thus, the Court turns its attention to the question of whether Deputy Meeks violated a constitutional right that was clearly established.

### a. Violation of a Constitutional Right

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002). Yet, it is well established "that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989); accord Lee, 284 F.3d at 1200 ("[T]he use of force is an expected, necessary part of a law enforcement officer's task of subduing and securing individuals suspected of committing

15

crimes."). Accordingly, the propriety of any particular use of force is adjudged by its objective reasonableness, a characteristic not contemplated in the abstract but instead measured after "consideration of the exigencies of the immediate situation and the officers' being forced to make split-second decisions." <u>Jackson v. Sauls</u>, 206 F.3d 1156, 1171 (11th Cir. 2000). In making this determination, courts have relied on three factors that the Supreme Court highlighted in <u>Graham</u>: (1) "the severity of the alleged crime," (2) "whether the suspect pose[d] an immediate threat," and (3) "whether the suspect [was] resisting or fleeing." <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1559 (11th Cir. 1993) (citing <u>Graham</u>, 490 U.S. at 396).

Based on Plaintiff's account of the facts, the <u>Graham</u> factors weigh in favor of excessive force. First, at the time force was applied, although Plaintiff had been placed under arrest for disorderly conduct and had committed the acts that would ultimately lead to her conviction for obstruction of an officer, at no time did Plaintiff engage in violence or threaten such. Second, because Plaintiff was in handcuffs and was being escorted from behind, Plaintiff did not pose an immediate threat. Third, while Plaintiff's instruction to Deputy Meeks to walk faster and her head-turning may be a form of resistance – albeit minimal – no reasonable officer could

consider it to be resistance with violence or an attempt to flee.

Consequently, assuming Plaintiff's alleged facts are true, Deputy Meeks' actions in upending a handcuffed Plaintiff and driving her to the ground were "plainly excessive, wholly unnecessary, and indeed, grossly disproportionate." See Lee, 284 F.3d at 1198. Combining this behavior with the broken arm that resulted, the Court concludes that Deputy Meeks' use of force may have been unreasonable and in violation of Plaintiff's constitutional rights.

### b. Clearly Established Constitutional Right

To show that the right Deputy Meeks violated was clearly established, Plaintiff has three options. See Loftus v. Clark-Moore, 690 F.3d 1200, 1204 (11th Cir. 2012). Plaintiff may (1) "show that a materially similar case has already been decided"; (2) "point to a broader, clearly established principle [that] should control the novel facts [of the] situation"; or (3) show that "the conduct involved in the case . . . so obviously violate[d] [] th[e] constitution that prior case law is unnecessary." Id. at 1204-05 (internal quotation marks and citation omitted).

With the hope of making the requisite showing under option one, Plaintiff cites to three cases: Lee, 284 F.3d at 1188; Slicker v. Jackson, 215 F.3d 1225 (11th Cir. 2000); and

Priester v. City of Riviera Beach, Fla., 208 F.3d 919 (11th Cir. 2000). However, the circumstances in those cases are distinguishable from the instant case. See Loftus, 690 F.3d at 1204 ("To assess whether previous cases clearly establish the law under the materially similar inquiry, we ask whether the factual scenario . . . is fairly distinguishable from the circumstances facing a government official in a previous case." (internal quotation marks and citation omitted)). In the cited cases, before they were subject to an officer's use of force, the plaintiffs offered no resistance. See Lee, 284 F.3d at 1191 (stating that the handcuffed plaintiff was merely standing next to a police car before force was applied); Slicker, 215 F.3d at 1233 (indicating that the plaintiff "did not resist, attempt to flee, or struggle with the officers in any way" before force was applied); Priester, 208 F.3d at 927 (providing that the plaintiff was lying down in front of an officer before force was applied). Conversely, before force was applied in this case, Plaintiff instructed the deputy to walk faster and turned her head to communicate with her husband. Though minimally resistant, this conduct is enough for the Court to conclude that the cases above do not establish the unlawfulness of Deputy Meeks' actions.

Unaware of any other cases with the potential of having materially similar facts, the Court turns its attention to the

18

question of whether there is "a broader, clearly established principle [that] should control the novel facts." <u>Loftus</u>, 690 F.3d at 1204. Here, the applicable principle - from <u>Saunders v. Duke</u>, 766 F.3d 1262, 1269-70 (11th Cir. 2014) - is as follows: Qualified immunity cannot "immunize officers who use excessive and gratuitous force after a suspect has been subdued, is not resisting, and poses no threat." <u>See also</u> <u>Lee</u>, 284 F.3d at 1200 ("[W]e are applying the clear and obvious principle that once an arrest has been fully secured and any potential danger or risk of flight vitiated, a police officer cannot employ the severe and unnecessary force allegedly used here."). At the time force was applied in this case, Plaintiff had been handcuffed and posed no threat of harm as she was being transported to the patrol car. However, because of the minimal resistance noted above, the Court cannot conclude that Plaintiff was fully subdued and compliant. Nevertheless, such a minimal level of resistance is not enough to remove this case from applicability under the principle stated in <u>Saunders</u>. The intent of the <u>Saunders</u> principle is to prevent officers from using unnecessary force when an arrestee clearly poses no threat, and here, on Plaintiff's facts, that is exactly what occurred. <u>See</u> <u>Saunders</u>, 766 F.3d at 1268-69; <u>Lee</u>, 284 F.3d at 1200 ("Because [the officer's] actions were so plainly unnecessary and disproportionate, no

19

reasonable officer could have had a mistaken understanding as to whether the particular amount of force [was] legal in the circumstances." (internal quotation marks and citation omitted)). For that reason, the Court concludes that Deputy Meeks may have violated a constitutional right that was clearly established. Given this conclusion, qualified immunity is inappropriate at this stage, and Plaintiff's excessive force claim may continue.[4]

### C. IIED, Assault, Battery

Within her brief in opposition to Defendants' motion, Plaintiff indicates that she "does not oppose Defendants' Motion as it relates to [her] claims asserted under Georgia law." (Pl.'s Br., Doc. no. 42-1, at 20.) Thus, Plaintiff's IIED, assault, and battery claims will not proceed to trial.


### III. CONCLUSION

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment (Doc. no. 40). Moving forward, only Plaintiff's excessive force claim against Deputy Meeks, in his individual capacity, shall proceed to trial. Consequently, the Court directs the

---

[4]  Even if Plaintiff's resistance was enough to take the instant case outside the purview of the Saunders principle, qualified immunity would still be improper because Deputy Meeks' conduct, on Plaintiff's facts, "so obviously violated" the Constitution. See Loftus, 690 F.3d at 1205 (stating that an official "so obviously violate[s] the constitution" when his conduct "lies so obviously at the very core of what the [relevant constitutional provision] prohibits" (internal quotation marks and citation omitted)).

Clerk to **ENTER JUDGMENT** in favor of Deputy DeLoach and to **TERMINATE** him as a party.

    **ORDER ENTERED** at Augusta, Georgia, this _23rd_ day of May, 2016.

                                    UNITED STATES DISTRICT JUDGE